GOODWIN *v.* GUILD.

(*Nashville.* March 1, 1895.)

MALICIOUS PROSECUTION. *What is not.*

The Mayor of a city is not liable for malicious prosecution in attempting to enforce an unconstitutional ordinance which had not been judicially declared invalid, although opinion as to its validity was divided, if he acted in good faith in the discharge of his official duty as he understood it, and without malice, oppression, or wanton disregard of the rights of the person prosecuted.

Case cited: 3 How., 87, 98.

---

FROM DAVIDSON.

---

Appeal from Circuit Court of Davidson County. N. D. MALONE, Sp. J.

COLYAR, WILLIAMSON & COLYAR, and J. W. GAINES for Goodwin.

SMITH & DICKINSON, BARTHELL & KEEBLE, and J. D. WADE for Guild.

WILKES, J. This is an action for false imprisonment and malicious prosecution. It was tried before a special Judge in the Court below without the intervention of a jury, and a judgment rendered

for $1,500—$1,000 of which were awarded as actual and $500 as exemplary damages—and defendant has appealed, and assigned many errors, which need not be treated in detail.

A short statement of the facts in the case is that plaintiff entered into a contract with the Board of Public Works and Affairs to construct a sewer in the city of Nashville. This contract, while dated April 14, 1892, appears to have been executed on the part of the board on April 18, 1892, and was in pursuance of a public letting to the lowest responsible bidder had before that date, and about April 2, 1892. The plaintiff secured the contract, and expected and intended to use convict labor in its execution; and there is proof tending to show that this fact was known to the Board of Public Works and Affairs at the time the contract was let to the lowest bidder. After the public letting on the second of April, the Mayor and City Council of Nashville, on the fourteenth day of April, 1892, passed an ordinance making it unlawful for any person to use or employ convict labor on any work to be executed under contract with the city of Nashville, under a penalty of fifty dollars for each violation. Defendant Guild was Mayor of Nashville, and, being notified that plaintiff was using convicts upon the work under his contract with the city, on April 23, 1892, went before the Recorder, and procured Mr. Cleary, Street Overseer, to make the necessary affidavit that plaintiff was violating the

city ordinance by working convicts in the city limits under his contract; and thereupon the Recorder and Judge of the City Court, at the suggestion of the said Guild, issued a warrant for plaintiff's arrest, which was given to a member of the police force, who met the plaintiff, read the warrant to him, and cited him to appear before the Recorder on the next morning, which he agreed to do. No actual arrest was made by touching the plaintiff or taking him into custody, and no bond for his appearance was required. He did appear, was fined fifty dollars, appealed to the Circuit Court, and was in that Court tried and acquitted December 15, 1892, on the ground that the city ordinance was in contravention of an Act of the General Assembly, and hence was void, and gave no authority for plaintiff's arrest. Thereupon, November 16, 1893, plaintiff brought this action for damages for false imprisonment and malicious prosecution against the defendant personally, and against the members of the Board of Public Works individually, and the Mayor and City Council of Nashville. On demurrer, the action as to the Mayor and City Council was dismissed. The cause was tried, and resulted in the acquittal of the members of the Board of Public Works, and in judgment against defendant, Guild, as before stated.

It is conceded that the ordinance of the city under which the Mayor proceeded was in contravention of the law, and was, therefore, void, but, at the time these proceedings were taken, it had not been so

declared by any judicial tribunal, and defendant insists that he acted in perfect good faith in attempting to execute the ordinance as it was passed and stood upon the books of the city, and was actuated by no malice. The Circuit Judge, in his written opinion, found that defendant was actuated by no feelings of malice.

It is said, however, that, previous to this time, the Board of Public Works had considered this ordinance and come to the conclusion that it was illegal, and had declined to enforce it, and so notified the Mayor, and such is the fact. It is also said that the city attorney had given an opinion adverse to the legality of the ordinance, and that this had been sent by the board to the Mayor along with a record of their action declining to enforce the ordinance. The proof in regard to this opinion is quite indefinite. It appears that such opinion was prepared by J. C. Bradford for the city attorney, Anderson, who felt himself incompetent to pass upon the matters, but at whose instance it was prepared, or to whom it was given, or by whom it was called for, does not definitely appear from the record. The defendant states emphatically that it was not called for by him, or given to him, and that he never saw it; but, on the contrary, that he applied to the city attorney for an opinion, which the regular city attorney, Anderson, declined to give, because of relationship to some party indirectly interested. The opinion of the Board of Public Works had no

judicial force, but was merely the expression of a divided board upon a legal question, which they could pass upon for themselves, but could not settle for anyone else, and the record wholly fails to fix the defendant with the receipt of the opinion of the city attorney, or the special attorney, whose opinion appears to have been given and afterwards lost in some unexplained manner. It does appear that there was a division of opinion as to the validity of the ordinance, and defendant states that his only object was to test the law and execute it, if valid, and that he had no other motive. It does not appear that he took any part in the proceedings after they were first instituted, but merely set on foot the proceedings to test and execute the ordinance. It is evident that this void ordinance could not justify the arrest of the plaintiff and his prosecution, still, it was the duty of the Mayor, as the chief executive of the city, to see its ordinances enforced, and, so long as he acted in good faith, and with no malice or improper motive, he cannot be held personally liable for a mere error in judgment. If he took advantage of his official position to oppress the plaintiff, either from ill will towards him, or because of any other improper motive, he would be liable.

The doctrine is tersely stated in *Kendall* v. *Stokes,* 3 How. (U. S.), 87, 98, by Chief Justice Taney, in these words: "A public officer is not liable to an action if he falls into an error in a case where the act to be done is not merely a ministerial one, but

is one in relation to which it is his duty to exer-cise judgment and discretion, even though an individual may suffer by his mistake."

In Bishop on Noncontract Law, Sec. 787, it is said: "By the express or implied terms of an officer's authority, he is to act honestly, carefully, and after the dictates of his own judgment, which, of necessity, being a human judgment, may err; therefore, when he has done what is thus commanded, whether the result is correct or not, he has exactly discharged his duty, and the law which compelled this of him will protect him, whatever harm may have befallen individuals."

In 14 Am. & Eng. Ency. of Law, p. 41, it is held that "public officers, called upon to act officially, may be held liable for a malicious prosecution upon the same grounds as other persons. But malice and want of probable cause ought very clearly to appear in such case. The presumption being strongly in their favor, mere ignorance of the law, or overpersuasion by others, is not sufficient." While we would not be understood as going to this latter length, still it will not do to apply the same strict rules of liability to an executive officer, whose duty it is to see the laws executed, if he makes a mistake in judgment, that would be applied to an individual who has no public duty to perform in executing its laws. To hold this strict rule would paralyze the arm of every executive and peace officer; and while such officer, for any wanton or malicious

abuse of legal process which is set on foot for the oppression of a citizen, must be held liable to the same or possibly a greater extent than a private individual, still there must be undoubted evidence of malice, oppression, and wanton persecution, with the absence of all probable cause or excuse, to hold a public official liable for errors in the execution of his official duties.

We cannot concur in the suggestion that the control of the police, and the enforcement of this ordinance against convict labor, rested exclusively with the Board of Public Works. While it was made their immediate duty to execute the ordinance, the Mayor was not thereby relieved, as chief city executive, from his duty under the charter to see this, as well as all other ordinances, enforced.

The management of the penitentiary is vested in the Superintendent, Warden, and other officials in immediate charge, and it is their primary duty to see the laws enforced, but the Governor of the State, as chief executive, is not thereby relieved from the duty of seeing that the laws in regard to the penitentiary and its convicts are enforced. He can neither delegate this duty to the prison officials nor can they take it from him.

The action taken by the Mayor was not, in the strict, technical sense, a criminal prosecution against the plaintiff. As was said in *Sparta* v. *Lewis*, 7 Pick., 374, "it is not a trial between the State and defendant, nor on a presentment or indictment by

and before a jury; but it is in the nature of a suit for debt. It is not a prosecution, but a suing in Court to recover a penalty for the violation of a city ordinance.'' It in no sense imputed to the plaintiff any corrupt, infamous, or degrading act, or any moral turpitude, but simply a disregard of an ordinance standing upon the records of the city; and, while the warrant was in form an order for the arrest of plaintiff, still it was executed by simply reading it to him, and citing him to appear before the Recorder the next morning, which he agreed to do. He was not taken into custody, was subjected to no indignity, was not required to go to jail, or even give a bond for his appearance before the Recorder. He was not restrained of his liberty or hindered in going where he pleased. He was virtually unknown to defendant, who had no personal ill will towards him. While this is not necessary, still it is a circumstance throwing light upon the question whether defendant had any improper motive of any kind in doing what he did.

We do not mean to be understood as holding that this ordinance was valid. It has already been held to be invalid. But, while it stood among the ordinances of the city, the Mayor cannot be held liable personally if, in good faith, he attempted to execute the same in the discharge of his duty as he understood it, and in the absence of any malice, oppression, improper motive, or wanton disregard of the plaintiff's rights, and we are unable, from this

record, to find any evidence of such malice, oppression, or improper motive on the part of the defendant.

For these reasons the judgment of the Court below is reversed, and the cause dismissed at plaintiff's cost.